IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

              Plaintiff,

   v.                     CASE NO:  1:22-CR-154

MICHAEL JOHN BATT,

              Defendant.

_____/


                 *   *   *   *

             CHANGE OF PLEA HEARING

                 *   *   *   *


BEFORE:   THE HONORABLE PHILLIP J. GREEN
           United States Magistrate Judge
           Grand Rapids, Michigan
           April 25, 2023

APPEARANCES:

APPEARING ON BEHALF OF THE PLAINTIFF:

      PATRICK JAMES CASTLE
      Assistant United States Attorney
      P.O. Box 208
      Grand Rapids, Michigan  49501-0208

APPEARING ON BEHALF OF THE DEFENDANT:

      DAMIAN D. NUNZIO
      29 Pearl Street, NW, Suite 415
      Grand Rapids, Michigan  49503

1          Grand Rapids, Michigan

2          April 25, 2023

3          at approximately 1:05 p.m.

4               PROCEEDINGS

5          THE COURT:  We are here in the matter of The United

6    States vs. Michael John Batt; Case Number 22-CR-154.  On

7    April 20th of this year, a plea agreement was filed with the

8    Court at Docket 24 indicating Mr. Batt intends to plead

9    guilty to Count One of the Indictment charging him with

10   sexual exploitation of a child.

11          Could I have appearance of counsel, please.

12          MR. CASTLE:  Patrick Castle for the United States,

13   your Honor.

14          MR. NUNZIO:  Good afternoon, your Honor.  Damian

15   Nunzio on behalf of the defendant, Michael John Batt,

16   sitting to my right.

17          THE COURT:  All right.  Good morning to you as

18   well.  And good morning to you, Mr. Batt.

19          Mr. Batt, I'm going to be talking to you about a

20   number of matters, including your rights, the nature of the

21   charge in Count One, the potential penalties and

22   consequences of pleading guilty to that charge, and the

23   provisions of the plea agreement.  Before I get into any of

24   that, I need to make sure that you are of a frame of mind to

25   understand what I'm saying and to be able to make what may

1    be one of the most important decisions of your life.  Do you

2    understand what I mean?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Is there anything physically or

5    mentally wrong with you that affects your ability to think

6    clearly?

7              THE DEFENDANT:  No.

8              THE COURT:  Are you taking any prescription

9    medication?

10             THE DEFENDANT:  No.

11             THE COURT:  Any other drugs or alcohol in the last

12   24 hours?

13             THE DEFENDANT:  No.

14             THE COURT:  How far did you get in school?

15             THE DEFENDANT:  I completed college.

16             THE COURT:  Good.  So you read and write English

17   pretty well?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Mr. Nunzio, do you have any reason to

20   believe that Mr. Batt is not competent to proceed?

21             MR. NUNZIO:  No, your Honor, I believe he is

22   prepared and competent to proceed.

23             THE COURT:  All right.  Thank you.

24             Mr. Batt, please don't take anything I say as an

25   indication one way or the other --  Well, let me back up a

minute.

Let me first address the fact you have a right to have this hearing conducted by the district court judge assigned to your case. This case is assigned to Judge Janet Neff. She was appointed by the President of the United States, and she serves a lifetime tenure. I'm a United States magistrate judge appointed by the district judges, and I serve a term of years. It is permissible for me to handle this hearing, but only if you and the government agree. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And are you agreeing to me handling this hearing?

THE DEFENDANT: Yes.

THE COURT: Mr. Nunzio, did he sign the consent?

MR. NUNZIO: He did, your Honor.

THE COURT: All right. Mr. Castle, does the government consent?

MR. CASTLE: Yes, your Honor.

THE COURT: All right. Now, Mr. Batt, please don't take anything I say this afternoon as an indication one way or the other about what I think you should do. I promise you I have no opinion about whether you should plead guilty. Even if I had an opinion, it would be completely irrelevant. The only person whose opinion matters here is you. You and

you alone must decide whether to plead guilty, as you and you alone will face the consequences of that decision. My job this afternoon is to make sure that if and when you make that decision, you're doing it with your eyes open, meaning you understand your rights, the nature of the charge, the penalties and consequences of pleading guilty, and the provisions of the plea agreement. Do you have any questions about any of that?

THE DEFENDANT: No.

THE COURT: You have a right to the representation and assistance of a lawyer throughout the proceedings in this case no matter how you choose to proceed. If you cannot afford a lawyer, one will be appointed for you at no cost to you. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Mr. Nunzio, are you appointed or retained?

MR. NUNZIO: Your Honor, I'm retained. Thank you.

THE COURT: All right. So you've hired the services of Mr. Nunzio, that is fine. You have every right to hire any lawyer you like, as long as you can pay for their services. But I want to make sure you understand that if at any point you would no longer be able to afford to pay for Mr. Nunzio's services, the Court would then appoint a lawyer for you free of charge. Accordingly, any concern you

1    might have about whether you would be adequately represented

2    at trial should play no part in any decision to plead

3    guilty.  Do you understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  You have the right to remain silent.

6    That means you have no obligation to say anything to anyone

7    from the government, anyone in law enforcement, or anyone

8    else for that matter.  Do you understand that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  If you do make a statement, what you

11   say may be used against you in a later court proceeding.  Do

12   you have any questions about that?

13             THE DEFENDANT:  No.

14             THE COURT:  If you plead guilty, you'll be giving

15   up your right to remain silent.  Not only will you give up

16   that right, but you would be placed under oath, subject to

17   the penalties of perjury, and I'll be asking you what you

18   did that makes you believe you are guilty of the offense

19   charged in Count One of the Indictment.  Do you understand

20   all of that?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Is it still your intention to plead

23   guilty?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Let's place Mr. Batt under oath,

1  please.

2                    MICHAEL JOHN BATT,

3  after having been first duly sworn to tell the truth, the

4  whole truth and nothing but the truth, was examined and

5  testified as follows:

6         THE COURT:  Mr. Nunzio, has Mr. Batt been arraigned

7  on the Indictment?  Mr. Castle?  Anybody?

8         MR. CASTLE:  Yes, your Honor.

9         THE COURT:  Okay.

10         MR. NUNZIO:  He has, your Honor.

11         THE COURT:  All right.  Does he have a copy of the

12  Indictment in front of him?

13         MR. NUNZIO:  He does, your Honor.

14         THE COURT:  All right.  Mr. Batt, I want to look at

15  Count One.  I want to make sure you understand what you are

16  being accused of here.

17         The grand jury is alleging that on September 19th

18  of 2022, while you were in Ottawa County, that you knowingly

19  used a minor to engage in sexually explicit conduct for the

20  purposes of producing a video using materials that were

21  shipped or mailed in interstate commerce, and the video of

22  which was transmitted through interstate commerce.

23  Specifically, the grand jury is alleging that you used a

24  child, who is designated as Child 1, who was about three

25  years old at the time, to engage in lascivious exhibition of

the child's genitals or pubic area for the purposes of
taking photographs.  The images of which were taken on an
Apple iPhone that was manufactured in China, and then
transmitted using internet based messaging application.
This would be a violation of Title 18, United States Code,
Section 2251(a).

To be convicted of this charge, the government
would have to prove beyond a reasonable doubt that you, in
fact, used a minor to engage in sexually explicit conduct,
that you used to make a visual depiction, that the depiction
was either produced or transmitted using materials shipped
in interstate commerce or transmitted using interstate
commerce.

Do you know what the word "lascivious" means.

THE DEFENDANT:  Yes.

THE COURT:  What does it mean?

THE DEFENDANT:  Lewd.

THE COURT:  Well, how would you define "lewd?"

THE DEFENDANT:  Inappropriate.

THE COURT:  Well, it's more specific than that.
And again, I want to make sure you understand what you are
being accused of.  Lascivious means to display in a manner
that is intended or likely to cause sexual arousal.  Do you
understand that?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Do you have any questions about what you're being accused of in Count One or what the government would have to prove to convict you of this charge?

THE DEFENDANT:  No.

THE COURT:  If you are convicted of Count One, which you will be if you plead guilty, you face a maximum penalty of 30 years in prison, and a mandatory minimum of 15 years in prison, a fine of up to $250,000, you would be subject to a period of supervised release of at least five years up to your lifetime, and you would be required to pay special assessments in the amounts of $100, $5,000, and up to $50,000.  You would also be required to pay restitution, which is payment for any damages caused as result of the alleged criminal conduct, and you would be required to register as a sex offender.

Supervised release, Mr. Batt, is a period of time following incarceration in which an individual is subject to certain terms and conditions set by the sentencing judge. If that individual knowingly violates any term or condition, he could be sent back to prison for up to the full term of supervised release.  In some instances, that could result in an individual spending more time in prison than what was allowed as the maximum penalty for the offense of conviction.  Do you have any questions about any of the

1  penalties for Count One?

2  THE DEFENDANT:  No.

3  THE COURT:  In 1984, the Congress of the United

4  States passed a law called the Sentencing Reform Act.  That

5  law did a number of things, one of which was to create the

6  United States Sentencing Commission.  The Sentencing

7  Commission is charged with developing and maintaining the

8  federal sentencing guidelines.  I'm sure Mr. Nunzio has

9  already talked to you about the sentencing guidelines; is

10  that right?

11  THE DEFENDANT:  Yes.

12  THE COURT:  All right.  That's good, that's a part

13  of his job to do that.  I want to make sure that you

14  understand, at least in general terms, how the guidelines

15  work.  If you plead guilty then Judge Neff has to determine

16  your sentence.  In making that determination, she must first

17  determine the sentencing guidelines range that applies in

18  your case, and that's essentially a two-part process.  The

19  first part is to determine what is known as the total

20  offense level.  That is a number.  That number begins with

21  another number called the base offense level.  The base

22  offense level is numbers determined by the offense of

23  conviction.  Then Judge Neff has to determine whether there

24  is any factor in this case that warrants an increase or a

25  decrease in that number.

1        An example of something that warrants a decrease is

2   what is called acceptance of responsibility.  If someone

3   pleads guilty and they are otherwise eligible, the

4   sentencing judge can reduce the offense level by up to two.

5   And if that individual's adjusted offense level is 16 or

6   greater and if the government asks, then the judge can

7   reduce it by up to three.  So once Judge Neff determines the

8   base offense level number and adds or subtracts for any

9   factor she determines applies, by simple mathematical

10  computation, that will tell her the total offense level

11  number.  She then has to determine which of the six criminal

12  history categories you fall into.  If you have no prior

13  convictions, you are automatically in Category I.  If you do

14  have any prior convictions, points will be assessed for each

15  conviction, depending upon the nature of the conviction, the

16  length of the sentence that was imposed, and how long ago

17  they were incurred.

18        Once Judge Neff adds up those points, she will turn

19  to a table, much like the one I'm showing you from the

20  inside back cover of the guidelines manual.  She will go

21  down vertically to the total offense level number and across

22  horizontally to the criminal history category.  That will

23  tell her your sentencing guidelines range, and that range is

24  always a range in months.

25        Do you think you understand at least generally how

1   the guidelines work.

2           THE DEFENDANT:  Yes.

3           THE COURT:  Now, Judge Neff is required by law to

4   accurately calculate the sentencing guidelines range in your

5   case, but she's not required to sentence you within that

6   range.  She has the discretion or the authority to impose a

7   sentence anywhere from the 15 year mandatory minimum to the

8   30 year statutory maximum.  If she gives you a sentence that

9   is above the guidelines range, you cannot withdraw from your

10  plea on that basis.  Do you have any questions about that?

11          THE DEFENDANT:  No.

12          THE COURT:  Has anybody told you they know for a

13  fact what sentence Judge Neff will give you?

14          THE DEFENDANT:  No.

15          THE COURT:  Has anybody told you they know for a

16  fact what guidelines range she will determine applies in

17  your case?

18          THE DEFENDANT:  No.

19          THE COURT:  That's good.  Nobody could possibly

20  know the answer to either of those questions.  I can assure

21  you Judge Neff doesn't know the answer to those questions.

22  And she won't determine the answers until after she has

23  reviewed the presentence report, she's reviewed everything

24  else in the file, she's listened to Mr. Castle, Mr. Nunzio,

25  and you.  Do you understand that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  If you plead guilty, the probation

3     department will prepare a presentence report.  That report

4     will contain a great deal of information about your

5     background, about the offense of conviction, any criminal

6     history you may have.  It will also contain the probation

7     department's recommendation as to which of the sentencing

8     guidelines provisions apply in your case.

9          An initial copy of that report will be given to Mr.

10    Nunzio for your benefit.  You and he will then have an

11    opportunity to review it, make suggestions, any corrections,

12    any additions, any changes you think should be made to the

13    report.  You will also have an opportunity to make

14    objections to the sentencing guidelines recommendations in

15    that report.

16         Mr. Nunzio will then meet with the probation

17    officer who wrote the report.  If he is successful in

18    convincing the probation officer to make the changes to the

19    report, that you and he think are appropriate, that's

20    obviously good for you.  If he is not successful, you can

21    still raise any of those issues with Judge Neff.

22         Judge Neff, and only Judge Neff, can ultimately

23    determine anything concerning sentencing.  But if you fail

24    to raise an issue with Judge Neff at or before the time of

25    sentencing, you may forever lose the opportunity to raise

that issue.  Do you have any questions about any of that?

THE DEFENDANT:  No.

THE COURT:  Congress also did away with parole.  In the state system, if someone is convicted of a crime, they are usually given a range sentence; for example, five to ten years.  Once they serve the minimum part of the sentence, they are usually eligible for parole, which means release from prison prior to the completion of the full sentence.  There is no parole in the federal system.  Accordingly, if you plead guilty and you are sentenced to prison, you should expect to serve the entire sentence minus any credit for good time served, as computed by the Bureau of Prisons.  Do you have any questions about that?

THE DEFENDANT:  No.

THE COURT:  Anyone who is convicted of a crime and sentenced to prison has the statutory right to appeal the conviction and sentence.

This Court is overseen by the Sixth Circuit Court of Appeals, which sits in Cincinnati, Ohio.  Accordingly, if convicted and sentenced to prison, you could raise any issue with that Court in which you believe an error occurred during the prosecution or sentencing in this case.

You can discuss with Mr. Nunzio whether you have any appealable issues.  I'm only raising it now to make sure you understand there is a strict time deadline for filing a

notice of appeal.  That is 14 days after the Court enters
what is known as the judgment and committal.

The judgment and committal is a document that
contains the information about the sentence, that is filed
the day of sentencing or shortly thereafter.  Once it's
filed, you've got 14 days to file that notice of appeal, and
if you fail to file it within the 14 days, you may forever
lose the right to appeal.  Accordingly, it's very important
that you stay in contact with Mr. Nunzio and let him know
immediately if you have any interest in appealing, as that
is your responsibility.  Do you have any questions about
that?

THE DEFENDANT:  No.

THE COURT:  Count One in the Indictment is a felony
offense.  Any offense for which the maximum penalty is more
than a year in prison is a felony, regardless of the actual
sentence imposed.  Because this is a felony offense, if you
plead guilty to it, you will lose certain of your
constitutional rights, including the right to vote, the
right to hold office, the right to serve on a jury, and the
right to possess firearms.  Do you have any questions about
that?

THE DEFENDANT:  No.

THE COURT:  Mr. Nunzio, is Mr. Batt currently on
probation, parole, or supervision in any jurisdiction?

1    MR. NUNZIO:  He is not, your Honor.

2    THE COURT:  All right.  Mr. Batt, at your

3    arraignment, a not guilty plea was entered on your behalf.

4    You have a right to persist in that not guilty plea and go

5    to trial.  I want to make sure you understand what rights

6    you would have if you chose to go to trial.

7    First of all, you have a right to a trial by jury.

8    You have a right to be represented by your attorney, Mr.

9    Nunzio, throughout that trial.  A right to at least 30 days

10   to prepare for trial, a right to confront and cross examine

11   any witness the government calls against you, a right to

12   present evidence on your own behalf, although you have no

13   obligation to do that.  If you want a witness to testify,

14   and he or she is unwilling to come voluntarily, the Court

15   will order them to appear.  You have a right not to be

16   compelled to incriminate yourself.  What that means is if

17   you chose to go to trial and chose not to testify, first of

18   all, no one could make you testify.  Secondly, Judge Neff

19   would explain to the jury that they could not hold it

20   against you that you did not testify.  On the other hand,

21   you have an absolute right to testify.  Nobody could keep

22   you from doing it, if that was your choice.

23   Mr. Batt, you are presumed innocent of the charges

24   against you, and you remain under that presumption unless

25   and until the government proves you guilty beyond a

1  reasonable doubt, and Judge Neff would explain that to the

2  jury as well.

3          Do you have any questions about any of your trial

4  rights.

5          THE DEFENDANT:  No.

6          THE COURT:  Other than your right to counsel, which

7  you keep no matter what you do, by pleading guilty, you'll

8  be giving up all of the rest of those trial rights I've

9  explained to you.  There will be no trial.  All that will be

10  left is for Judge Neff to decide your sentence.  Do you have

11  any questions about that?

12          THE DEFENDANT:  No.

13          THE COURT:  Has anyone threatened you or put any

14  pressure on you to get you to plead guilty?

15          THE DEFENDANT:  No.

16          THE COURT:  Has anyone promised to do anything for

17  you other than what is in the plea agreement?

18          THE DEFENDANT:  No.

19          THE COURT:  Is this your decision and yours alone?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Is it purely voluntary?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Have you had enough time to think about

24  it and to discuss it with Mr. Nunzio?

25          THE DEFENDANT:  Yes.

1          THE COURT:  Let's take a look at the plea

2    agreement.  Do you have a copy in front of you?

3          THE DEFENDANT:  I do.

4          THE COURT:  The plea agreement is 13 pages; is that

5    right?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Let's look at the last page, please.

8          THE DEFENDANT:  This one here?

9          THE COURT:  There are three signatures on that

10   page; is that correct?

11         THE DEFENDANT:  Yes.

12         THE COURT:  The top signature, I recognize that to

13   be of Mr. Castle's, the bottom is Mr. Nunzio.  Is the middle

14   signature yours?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Did you sign it on April 19th of this

17   year?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Now, Mr. Batt, before you signed the

20   plea agreement, did you read it in its entirety carefully?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Did you discuss it with Mr. Nunzio?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Did he answer all of your questions to

25   your satisfaction?

1          THE DEFENDANT:  Yes.

2          THE COURT:  At the time you signed the plea

3     agreement, do you believe you understood everything in it?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Did you agree to everything?

6          THE DEFENDANT:  Yes.

7          THE COURT:  I'm going to read the paragraph

8     immediately above your signature and ask you to follow along

9     silently:

10          "I've read this agreement and carefully discussed

11     every part of it with my attorney.  I understand the terms

12     of this agreement and I voluntarily agree to those terms.

13     My attorney has advised me of my rights, of possible

14     defenses, of the sentencing provisions, and of the

15     consequences of entering into this agreement.  No promises

16     or inducements have been made to me other than those

17     contained in this agreement.  No one has threatened or

18     forced me in any way to enter into this agreement.  Finally,

19     I am satisfied with the representation of my attorney in

20     this matter."

21          Did I read that correctly?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Is everything in that paragraph true

24     and accurate?

25          THE DEFENDANT:  Yes.

1       THE COURT: All right. I want to talk to you about

2    a few things in the plea agreement. Paragraph 5 on Page 2,

3    it goes into Page 3, this talks about restitution and

4    payment of penalties and fines. It indicates here that you

5    understand that you are going to be required to pay special

6    assessments and as well as the possibility of restitution.

7    That if the Court orders restitution, the restitution may be

8    based not solely on the conduct related to Count One, but

9    all of the victims that may have been involved with either

10   of the counts of the Indictment. Do you understand that?

11       THE DEFENDANT: Yes.

12       THE COURT: You have agreed to cooperate with the

13   government in filling out financial forms and providing all

14   the information that the government needs to collect the

15   fines and restitution and special assessments. Do you have

16   any questions about that?

17       THE DEFENDANT: No.

18       THE COURT: You've also agreed in Paragraph 7 to

19   cooperate with the government in the forfeiture of assets.

20   And I should have covered that with the Indictment.

21       Count One in the Indictment, Mr. Batt, there is a

22   forfeiture allegation. A forfeiture allegation is the

23   government's way of putting you and the Court on notice that

24   if you are convicted of Count One, the government intends to

25   ask the Court to forfeit, that is take from you, any

possessory or ownership rights you might otherwise have in

any property that was used to commit the crime or property

or money obtained from the commission of the crime.  Do you

understand what the forfeiture allegation is all about?

THE DEFENDANT:  Yes.

THE COURT:  So in Paragraph 7, you've agreed to

cooperate fully with the government in the seizure of any

assets that would be subject to forfeiture, and that you

consent to the forfeiture of certain properties that are

listed on Pages 5 and 6 of the plea agreement.  Do you have

any questions about that?

THE DEFENDANT:  No.

THE COURT:  We are going to skip over Paragraph 8

for now.

In Paragraph 9, the government has agreed to

dismiss the other count against you at sentencing, but it

indicates that you understand that Judge Neff can still

consider the conduct relating to Count Two in determining

your sentencing guidelines range as well as your sentence.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Paragraph 10 indicates the government

has agreed that if, in the government's view, you are

eligible for acceptance of responsibility, and if your

adjusted offense level is 16 or greater, the government has

1   agreed to ask Judge Neff for that third level.  Do you have

2   any questions about that?

3           THE DEFENDANT:  No.

4           THE COURT:  Paragraph 11 has to do with prison

5   placement.  Apparently you are interested in asking Judge

6   Neff to make a recommendation as to which Bureau of Prisons

7   facility you would serve your sentence in.  The government

8   has simply agreed not to object to that recommendation.

9   It's important that you understand that while Judge Neff can

10  decide and make a recommendation or not.  Even if she does

11  make a recommendation, there is no guarantee that the Bureau

12  of Prisons will follow that recommendation, as the Bureau of

13  Prisons has to make an independent determination of which

14  facility to place people in.  Do you have any questions

15  about that?

16          THE DEFENDANT:  No.

17          THE COURT:  Paragraph 17 says the Court is not a

18  party to this agreement.  That is a true statement.

19          Mr. Batt, a plea agreement is a contract.  The only

20  people bound by a contract are those who sign it.  Judge

21  Neff has not signed the plea agreement, nor is she ever

22  going sign the plea agreement.  She is not bound by anything

23  in this plea agreement.  And if in sentencing she disregards

24  something in the plea agreement, you cannot withdraw from

25  your plea on that basis.  Do you have any questions about

1   that?

2          THE DEFENDANT:  No.

3          THE COURT:  Paragraph 18 indicates this agreement

4   is limited to the parties.  This reflects the fact that Mr.

5   Castle represents the United States here in the Western

6   District of Michigan, but he doesn't have the authority to

7   bind any other district or any other government agency.  Do

8   you understand that?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Paragraph 19 talks about consequences

11  of breach.  The word breach refers to somebody breaking a

12  promise they have made in a contract.  Basically what this

13  says is if you break any of the promises you made in this

14  plea agreement, the government can do one of two things;

15  they could go to Judge Neff, ask her to tear up the plea

16  agreement, put you back to square one where you are today,

17  or the government could ask her to hold you to your plea but

18  otherwise deny you certain benefits you would have obtained

19  under the plea agreement.  Do you have any questions about

20  that?

21         THE DEFENDANT:  No.

22         THE COURT:  Paragraph 20 says that this is a

23  complete agreement.  In other words, nobody has offered or

24  promised to do anything for you, other than what is written

25  in this 13-page document.  Do you believe, Mr. Batt, that

1 anyone has offered or promised to do anything for you that's

2 not in this plea agreement?

3         THE DEFENDANT:  No.

4         THE COURT:  Mr. Nunzio, are you aware of any side

5 agreements?

6         MR. NUNZIO:  No, your Honor.

7         THE COURT:  Mr. Castle, any side agreements offered

8 here?

9         MR. CASTLE:  No, your Honor.

10         THE COURT:  All right.  Paragraph 22 talks about

11 the requirement that you register as a sex offender, and

12 that will apply in any place where you live, work, or attend

13 school, and the failure to register could result in

14 additional criminal prosecution.  Do you have any questions

15 about that?

16         THE DEFENDANT:  No.

17         THE COURT:  You've also agreed in Paragraph 22(b),

18 to allow yourself to be tested for sexually transmittable

19 diseases and to follow-up tests as appropriate.  Do you have

20 any questions about that?

21         THE DEFENDANT:  No.

22         THE COURT:  All right.  Anything else you want me

23 to cover in the plea agreement, Mr. Nunzio?

24         MR. NUNZIO:  No, thank you, your Honor.  We believe

25 the Court has satisfied that requirement.

1           THE COURT:  Mr. Castle, same question.

2           MR. CASTLE:  The government has a note about the

3  factual basis, but nothing that -- nothing else.

4           THE COURT:  The factual basis we will cover in a

5  minute.

6           MR. CASTLE:  Yes.

7           THE COURT:  Okay.  Thank you.

8           All right.  Now, Mr. Batt, while Judge Neff is not

9  required to follow anything in the plea agreement, she does

10  have to make a decision whether to accept it.  She will only

11  make that decision after she's reviewed the presentence

12  report.  Do you have any questions about that?

13           THE DEFENDANT:  No.

14           THE COURT:  We are now at the point where you have

15  to make that decision whether to plead guilty.  Before I ask

16  you to enter a plea, I want to ask one last time.  Do you

17  have any questions or concerns about any of your rights as

18  I've explained them to you?

19           THE DEFENDANT:  No.

20           THE COURT:  Any questions or concerns about what

21  you're being accused of in Count One?

22           THE DEFENDANT:  No.

23           THE COURT:  Any questions or concerns about the

24  potential penalties or consequences of pleading guilty, as I

25  have explained them to you?

1          THE DEFENDANT:  No.

2          THE COURT:  Any questions or concerns about

3     anything in the plea agreement?

4          THE DEFENDANT:  No.

5          THE COURT:  In that case, Mr. Batt, how do you

6     plead to Count One of the Indictment charging you with

7     exploit -- sexual exploitation of a child?

8          THE DEFENDANT:  Guilty.

9          THE COURT:  The Court cannot accept a guilty plea

10    unless it's satisfied that the person is, in fact, guilty.

11    Accordingly, we need to establish a factual basis for your

12    plea.

13         Let's turn back to the plea agreement Page 7,

14    Paragraph 8.  Are you there?  And I've already asked you --

15         MR. NUNZIO:  I'm sorry, excuse me.

16         THE COURT:  Paragraph 8.

17         MR. NUNZIO:  Paragraph 8, your Honor.

18         THE COURT:  Yes, Page 7.

19         MR. NUNZIO:  Thank you.

20         THE COURT:  You are welcome.

21         Now, Mr. Batt, I've already asked you if you read

22    the plea agreement in its entirety carefully.  Whether you

23    understood everything in it and agreed to everything in it,

24    you responded in the affirmative as to each of those

25    questions.  I'm now going to ask you, did you read

1    everything in Paragraph 8 carefully?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Is everything in Paragraph 8 true and

4    accurate?

5              THE DEFENDANT:  Yes.

6              THE COURT:  All right.  So this indicates that on

7    September 20th, you took a video, was it?

8              MR. CASTLE:  Your Honor, may I add something?

9              THE COURT:  Yes.

10             MR. CASTLE:  I've conferred with defense counsel

11   about this.  The government specifically --

12             THE COURT:  I see there is a difference in date

13   between the Indictment.

14             MR. CASTLE:  I made an error.  The distribution was

15   on September 20th, however, the photograph was taken on the

16   19th.

17             THE COURT:  Okay.

18             MR. CASTLE:  I've conferred with defense counsel

19   and what I propose is right after this hearing is over, I'll

20   go make the following changes:

21             I'll say on September 19 and 20, and then after

22   "take and distribute" I'll put the word respectively in

23   parens, which will then accord the right dates with the

24   conduct, and that will correct the error.

25             THE COURT:  Okay.  Mr. Nunzio, are you okay with

1  that plan?

2       MR. NUNZIO:  We have no objection, and we so

3  stipulate to the amendment, your Honor.

4       THE COURT:  All right.  So, Mr. Batt, do you

5  understand what they are talking about?

6       THE DEFENDANT:  Yes.

7       THE COURT:  So what Mr. Castle is telling me is

8  that you took the photograph -- or was it a photograph or a

9  video?

10       THE DEFENDANT:  Photographs, your Honor.

11       THE COURT:  All right.  You took the photographs on

12  September 19th and distributed them the next day.  So Mr.

13  Castle is going to amend the language in Paragraph 8 of the

14  plea agreement to indicate that the photograph was taken on

15  September 19th, 2022, distributed the next day on September

16  20th.  Are you okay with those changes?

17       THE DEFENDANT:  Yes.

18       THE COURT:  And is that true and accurate?

19       THE DEFENDANT:  Yes.

20       THE COURT:  All right.  So on September 19, you

21  used your iPhone to take a picture of this child who is

22  designated here by the Number 1; is that correct?

23       THE DEFENDANT:  Yes.

24       THE COURT:  And where did you take this --  Where

25  were you when you took the picture?

1          THE DEFENDANT:  At home.

2          THE COURT:  And is your home in the Western

3    District of Michigan?

4          THE DEFENDANT:  Yes.

5          THE COURT:  What county?

6          THE DEFENDANT:  Ottawa.

7          THE COURT:  Ottawa County.

8          All right.  And when you took the picture of this

9    child, and the child was about three years old?

10          THE DEFENDANT:  Yes.

11          THE COURT:  When you took the picture of the child,

12    was -- were the clothes off of the child?

13          THE DEFENDANT:  Yes.

14          THE COURT:  All right.  And did you --  You heard

15    me explain to you what the word "lascivious" means.  Do you

16    remember that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And when you took the photograph, did

19    you have the child in a position that it depicted a

20    lascivious exhibition of the child's bottom and genitals?

21          THE DEFENDANT:  Yes.

22          THE COURT:  And then I take it --  Did you transmit

23    this photograph over the internet?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Now, the iPhone was manufactured in

China.  Do you have any reason to question that or?

THE DEFENDANT:  No.

THE COURT:  All right.  What was the internet
access that you used to transmit the photograph?

THE DEFENDANT:  It was the Wicker application.

THE COURT:  Okay.  Mr. Castle, anything else we
need to cover by way of a factual basis?

MR. CASTLE:  No, your Honor.

THE COURT:  Are you satisfied we have sufficient
basis, Mr. Nunzio?

MR. NUNZIO:  Yes, your Honor.

THE COURT:  All right.  I find that Mr. Batt
understands the nature of the charge in Count One and the
penalties provided by law as I've explained to him.  I find
that the plea is made knowingly, with full understanding of
each of the rights I have explained, and that the plea is
voluntary, free of any force, threats, or promises apart
from the plea agreement.  I also find that the plea has a
sufficient factual basis.  I defer acceptance of the plea
agreement to Judge Neff who, as I indicated earlier, will
decide whether to accept it only after she's read the
presentence report.

Mr. Batt, I'll be recommending to Judge Neff that
she accept your guilty plea.  I'll do that by way of a
written report and recommendation, which will be filed

 1    either today or no later than tomorrow.  You have 14 days in
 2    which to file an objection to that report and
 3    recommendation, and Mr. Nunzio will handle that for you.  If
 4    Judge Neff accepts my report and recommendation, you will be
 5    convicted of Count One at that time.  Do you have any
 6    questions about any of that?
 7            THE DEFENDANT:  No.
 8            THE COURT:  All right.  Anything else we need to
 9    take up at this time, Mr. Castle?
10            MR. CASTLE:  No, thank you, your Honor.
11            THE COURT:  All right.  Mr. Nunzio, anything
12    further?
13            MR. NUNZIO:  No, your Honor.  Thank you for taking
14    this plea.
15            THE COURT:  All right.
16            COURT CLERK:  Court is adjourned.
17        (At 12:11 p.m., proceedings concluded.)
18
19
20
21
22
23
24
25

1
2
3
4                            CERTIFICATE
5
6        I certify that the foregoing is a transcript from the
7    Liberty Court Recording System digital recording of the
8    proceedings in the above-entitled matter, transcribed to the
9    best of my ability.
10
11   May 26, 2023
12
13
14                       /s/ Kathleen S. Thomas
15                       Kathleen S. Thomas, CSR-1300
16
17
18
19
20
21
22
23
24
25