1

2                    *IN THE UNITED STATES DISTRICT COURT*
                  *FOR THE WESTERN DISTRICT OF MICHIGAN*
3                          *SOUTHERN DIVISION*

4

5      UNITED STATES OF AMERICA,

6                      Plaintiff,

7      vs.                                Case No.  1:22-cr-154

8      MICHAEL JOHN BATT,

9                      Defendant.
       _____/
10
                           *SENTENCING HEARING*
11
                  *BEFORE THE HONORABLE JANET T. NEFF*
12                      *United States District Judge*

13          *Lansing, Michigan, Wednesday, August 16, 2023*

14

15     APPEARANCES:
       For the Plaintiff:    MR. PATRICK JAMES CASTLE
16                           330 Ionia Avenue, NW
                             P.O. Box 208
17                           Grand Rapids, MI 49503

18
       For the Defendant:    DAMIAN D. NUNZIO
19                           29 Pearl Street NW
                             Suite 415
20                           Grand Rapids, MI 49503

21

22

23     REPORTED BY:          GENEVIEVE A HAMLIN, CSR-3218, RMR, CRR
                             Federal Official Court Reporter
24                           110 Michigan Avenue NW
                             Grand Rapids, MI 49503
25

1    Grand Rapids, MI

2    August 16, 2023

3    11:05 a.m.

4                              *PROCEEDINGS*

5            THE CLERK:  All rise, please.  Hear ye, hear ye, hear

6    ye.  The United States District Court for the Western District

7    of Michigan is now in session.  The Honorable Janet T. Neff,

8    United States District Judge, presiding.

9            All persons having business before this Court, draw

10   near, give attention, and you shall be heard.  God save these

11   United States and this Honorable Court.  Court is now in

12   session.  Please be seated.

13           THE COURT:  Good morning, everybody.

14           MR. NUNZIO:  Good morning.

15           THE COURT:  This is the date and time for sentencing

16   in case number 1:22-cr-154, the United States of America

17   versus Michael John Batt.

18           May I have appearances and introductions, please?

19           MR. CASTLE:  Good morning, Your Honor.  Patrick

20   Castle on behalf of the United States.

21           THE COURT:  Thank you.

22           MR. NUNZIO:  Good morning, Your Honor.  Damian Nunzio

23   on behalf of the defendant, Michael John Batt, who is to my

24   left, Your Honor.

25           THE COURT:  Thank you.  On April 25, 2023, Mr. Batt

appeared before Magistrate Judge Phillip Green and entered a
guilty plea to Count 1 of a two count indictment which also
includes a forfeiture count.

Count 1 charges sexual exploitation and attempted
sexual exploitation of a child, that offense being contrary to
18 USC 2251(a) and (e).

There is a mandatory 15 year minimum sentence with
that crime to a maximum of 30 years imprisonment and a maximum
$250,000 fine.

The offense behavior can be fairly summarized as
follows:  There's a minimal factual basis of the crime at
paragraph 8 of the plea agreement and it reads as follows:

Defendant and the United States Attorney's Office
agree and stipulate to the following statement of facts which
need not be proven at the time of the plea or sentencing.

On September 19, 2022, defendant used his IPhone,
which was manufactured in China, to take photographs of child
one who was three years old.  Two of the photographs depict
lascivious exhibition of child one's anus and genitals.

On September 20, 2022, the defendant distributed
those two photographs over the internet, and just for
clarification purposes I want to also put on the record this
from the pre-sentence report, for guideline purposes Mr. Batt
is responsible for an offense against a minor victim who had
not attained age 12 for the offense involving a sexual act or

sexual conduct -- contact or knowingly engaging in distribution of material portraying a toddler and for being the parent of the minor involved in the offense.

The magistrate judge's report and recommendation was adopted on May 11, 2023. There is a written plea agreement in this case which I accept at this time, and I find that the charge pled to adequately reflects the seriousness of the defendant's actual offense behavior.

There is also a pre-sentence report.

Mr. Castle, does the government have any issue with the factual recitation in the report?

MR. CASTLE: No, Your Honor.

THE COURT: Thank you. Mr. Nunzio, on behalf of the defendant, any issue with the facts as set out in the report?

MR. NUNZIO: No. Thank you, Your Honor.

THE COURT: Thank you. Mr. Batt, a couple of questions for you. Would somebody please pull that microphone a little bit closer? Thank you.

Mr. Batt, have you read the pre-sentence report?

THE DEFENDANT: Yes.

THE COURT: Have you discussed it carefully and thoroughly with your attorney, Mr. Nunzio?

THE DEFENDANT: Yes.

THE COURT: As you sit here in the courtroom this morning is there anything about the report that you either

don't understand or about which you have any question?

THE DEFENDANT:  No.

THE COURT:  Now, you have retained Mr. Nunzio to represent you, as is your right.  If you had been indigent, you could have requested appointed counsel.  That would have been your right, too, but in any event, have you been satisfied with the work that Mr. Nunzio has done on your behalf in this case?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  The pre-sentence report includes a calculation of the guidelines and the guideline advisory ranges as follows:

The offense level is 43.  Criminal history category is computed at one based on zero criminal history category points, and those two calculations place this case in Zone D of the grid where the advisory range for incarceration is life.  However, as noted earlier, there is a 30-year maximum potential incarceration penalty in this case.

The supervised release range is five years to life. The fine range is 50,000 to $250,000.  Restitution has at least tentatively been calculated at $19,000.

There is a special assessment which is mandatory of $100, but also in this case we have the potential for a $5,000 special assessment under the Justice for Victims of Trafficking Act and a potential $50,000 assessment under the

Child Pornography Victim Assistance Act of 2018.

There are no objections to scoring in this case, and my calculations are the same as the pre-sentence writer's. Offense level 43, criminal history category one, advisory range for custody, 360 months; advisory range for supervised release, five years to life; advisory range for fine, 5,000 to $250,000; restitution at $19,000; a special assessment of $100 along with the potential assessments for the juveniles with -- I'm sorry, the Justice for Victims of Trafficking and the Child Pornography Victim Assistance Act of 2018.

There have been no motions for departure under the guidelines and, again, the advisory ranges are for incarceration, 360 months, for supervised release, five years to life, the fine range 50,000 to $250,000.

Counsel, are you in agreement with the accuracy of those calculations?  Mr. Castle?

MR. CASTLE:  Yes, Your Honor.

THE COURT:  Thank you.  Mr. Nunzio?

MR. NUNZIO:  Yes, Your Honor.

THE COURT:  Thank you.  Mr. Nunzio, are you ready for your allocution?

MR. NUNZIO:  Yes, Your Honor.

THE COURT:  Please come --

MR. NUNZIO:  Do you want me to come to the podium with Mr. Batt?

THE COURT:  Yes.

MR. NUNZIO:  Thank you.  Come on.  Your Honor, if it pleases the Court, at this time Mr. Batt, who I've known now for close to a year since this matter had started, his family, friends, there are two priests and a decan in the court who undeniably show their love and respect for Michael, and in no way do I want this Court to think that we're minimizing anything that took place here.  He plead guilty.  He accepted responsibility, and he knows he has to be punished.

You know, in our request for downward variance, Your Honor, we had put in at least references to the type of person Michael is and Michael was during a period of time prior to when this event took place, and I've come to know him for the multiple, multiple visits that I've had with him at the Newaygo County jail and I've always found him to be courteous, cordial, remorseful, repentant in his way, and he does have the love and affection of a very successful family, doctors, lawyers, other successful people in the family, and there is no rational explanation regarding why or what he did with respect to this.  It's just not rational to sit up here and say he did it because of this reason or that reason.  That was, undeniably, a selfish act on his part.  It is torrid.  It is just not kind.  It's inappropriate, just to use a few words.

But having practiced for many years, mostly down the

street in Kent County courthouse, I -- there is just no

rational explanation for why someone would do this, especially

in light of the wonderful family that I've met over the past

year or close to the last year.  And the sentencing guidelines

are just high.  They're horrific.  They're accurate, but

they're horrific.  There is a mandatory minimum of 15 on this,

and the question is -- that Michael and I have been talking

about is, you know, what's the balance?  What's the Court

going to do?  What's the right thing to do?  And he knows he

has to be punished and he knows he has to be punished for a

long period of time.  That's without question, Your Honor.

But with the letters of recommendation, the character

references that he received, there is still potential for his

life if he has the opportunity to get out at some point to

help cure what he turned to bad.  He's lost his girls.  He's

lost his wife, his family, respect, reputation.  It's just --

it was -- it was a cascading event that just tumbled into

where we are here today.

You know, you talk to family members, and I know the

Court sees them here today, and friends, and how do you

explain to them why or what he did?  And there is no

explanation.  There is no rational explanation other than it

was wrong, it is wrong, and that's why, you know, the

legislature had put this kind of time frame on these cases to

let people know, let the community know, let the United States

know that this conduct is just unacceptable in every form.
Every form.  And I'm not going to sit up here and say he
didn't kill anybody, he didn't do this, he didn't do that,
because that's just -- that's just another dimension that
doesn't even apply to this case.  He knows what he did was
wrong, and he accepted responsibility for it.

What we're asking the Court to do is just consider
and fashion a sentence that he will have the opportunity to
join up with his family sooner rather than later, and I use
those words specifically, sooner rather than later.  The Court
will decide what sooner and what later is, but we're not going
to minimize but apologize for the conduct that he had
committed.  We're not giving any explanation other than it was
wrong and he knows he has to be punished for it.

His family is just absolutely devastated over this.
The people I've talked to and met over the past close to a
year, just devastated, and their hope is that he gets out
sooner rather than later so that he can at least start on
anew, start afresh, learn from not a mistake but a wrongful
act.  I know the Court hears a lot that people come here
before the Court and say, I made a mistake, what I did -- no,
this is not a mistake.  This was an intentional wrongful act
by my client.  Nothing short of that.

I know he wants to make a few words to the Court
regarding his intentions today as they have been for the past

close to a year since last October about his remorse, his
sorrowfulness, what he's done to his family, both his
immediate family and the family in the courtroom today so the
Court has an understanding of there is rehabilitation, there
is -- there is penance.  The question is how long, how severe,
and we're just hoping the Court takes into consideration some
of the good things that have been said on his behalf when it
fashions the sentence for Mr. Batt.  Thank you, Your Honor.

THE COURT:  Thank you, Mr. Nunzio.  Mr. Batt, as
indicated by Mr. Nunzio, at this point in time you have the
right to speak on your own behalf to tell me anything you
think I should know about you or about what you've done before
I pass sentence in this case, so let me hear what you have to
say.

MR. NUNZIO:  Tell her from the heart.

THE DEFENDANT:  I have --

MR. NUNZIO:  Speak loud.

THE DEFENDANT:  I have no explanation for what I've
done.  It was wrong.  I know it was wrong.  I've devastated my
family, you know, my kids, my wife, all my brothers and
sisters, all my friends, family, people that have known me.
I've disappointed them.  Myself, I've disgusted myself, and I
hope that I can make it up to them, that they'll see me the
way that I was and see the person that I am and want to be.

THE COURT:  Well, who is the person that you are?

THE DEFENDANT:  I was a hard worker, a loving father, I worked within the community.  I always did my best.  I always helped people.  I helped whoever I could that was in need.  I tried never to pass judgment on anybody.  I was always there willing to help with whatever anybody needed.

It would be very beneficial to me to seek therapy to help me work through, you know, these mental problems that caused me to act the way that I did to try and figure out any sort of explanation for why, to help through the emotional problems of, you know, destroying my family and my extended family and all of my friendships.

THE COURT:  You have to know, Mr. Batt, that lots of people come through this courtroom and the other courtrooms in this building having committed wrongful, illegal acts, and the one that you have committed stands out as the most appalling of all.  As parents we owe our children a lot beyond the basics of food and a roof over their heads and all of that.  We owe them a sense of safety and trust, and that I think is why this offense is so abhorrent to just about everybody, and we'd like to know why dads do this kind of thing, and if you don't know, I'm not sure the rest of us can figure it out either, but we do know that society looks down on this kind of crime, and we see what the sentencing guidelines tells us is appropriate for punishment, but if there's anything more you'd like to share, please do so.

THE DEFENDANT:  Yes.  I would -- I would like to
apologize to my wife -- my ex-wife and my children.  They are
a little piece of my soul that I will never get back, and I
could never begin to make up for what I did to them.  I miss
them dearly.  I think about them every day.  I pray for them
every day.  They are -- they are something that was my life
and I wanted to do no wrong to them and yet I did, and I have
to pay for that, and I have to hope that they will be okay,
that they will be able to live out the rest of their lives in
relative comfort and success, and I can always look forward to
the fact that they will, you know, hopefully be successful in
that life.

There are no words that I could say to them that
would truly cover an apology.  I can just offer the words I'm
sorry for what I've done and hope that they can glean further
meaning from them.

THE COURT:  Thank you.  You may return to your seat.

MR. NUNZIO:  Yes, Your Honor.

THE COURT:  Mr. Castle, on behalf of the government,
please.

MR. CASTLE:  Thank you, Your Honor.  You know, as a
general matter, as the Court has identified, the gravity of
this crime speaks for itself.  However, because Mr. Batt
believes that leniency is warranted, that a downward variance
would be appropriate, I feel compelled to highlight to the

Court a few specific observations.

First, in response to Mr. Nunzio's comments and Mr. Batt's remarks, however horrific this conduct was, there is a rational explanation for it. Rational explanation is that Mr. Batt has a sexual attraction to children, that he had access to two vulnerable victims, his own two daughters, and that he took opportunity -- took advantage of that access to abuse them.

A few comments from the record we have, from the PSR. What we see from the pre-sentence report and even from the letters of support that were filed on Mr. Batt's behalf is that Mr. Batt's daughters were especially trusting of and reliant on him. Mr. Batt emphasized in his statements to the probation officer that his children are his proudest accomplishment, and nearly all of Mr. Batt's supporters in their letters to the Court commented on his relationship with his daughters, and they variously remarked on how much responsibility he held for them and that they trusted and relied on him. One letter described them as devoted to him. The notion, however, that, as Mr. Batt just suggested to the Court, stepping back and taking a holistic view, that Mr. Batt is a loving father is, quite frankly, absurd.

The second observation I would point out is that Mr. Batt physically abused his daughters. First, although his daughters did not report abuse and investigators did not find

evidence of it, he explained to the undercover detective who

he thought was another person who had a sexual interest in

children that he abused his children sneakingly and carefully.

He disguised it as play or as cleaning so as to avoid

detection from his wife and others.  He later retracted that

admission, but as quoted in the pre-sentence report, he

described what he did in graphic detail, and he created child

pornography of his children and distributed it, and he has

admitted and there's no objection to the pre-sentence report

scoring for sexual contact.

We don't know how much of what he described is

fantasy and how much of it is real, but we know the nature of

what he did and we know that there is no -- no objection to

that on Mr. Batt's behalf today.

Next, Mr. Batt worked in IT in a public school, and

in his statements to investigators he made a reference to

viewing child pornography in investigations in that context,

so even in his profession he held a position of public trust

that he evidently used as a means of viewing child

pornography, which is especially concerning.

Next, Mr. Batt worked as a private IT consultant, and

he acknowledged obtaining child pornography from clients'

computers, presumably instead of reporting them to law

enforcement, another huge concern and distinguishing factor in

this case.

1   Finally, the government would ask the Court to

2   consider the broader range of victims in this case even beyond

3   Mr. Batt's daughters, including his ex-wife, his ex-wife's

4   family of which a member is here today, Mr. Batt's own family,

5   everybody in the lives of these little girls who love them and

6   who have been affected by this so significantly.  Even beyond

7   those victims, Mr. Batt had amassed an absolutely massive

8   collection of child pornography, and the restitution requests

9   in this case are from victims of that relevant conduct.  As

10  the Court knows, there's not a restitution request from his

11  victims of the charged offense.  Tens of thousands of files

12  that he maintained on an encrypted drive.  As he explained to

13  the undercover investigator, it required technical know-how to

14  secretly amass and store that collection, and he offered to

15  advise the undercover detective on how he, too, could become a

16  more sophisticated collector and consumer of child

17  pornography, and so for these reasons the government opposes

18  defendant's request for a downward variance.

19       THE COURT:  Thank you, Mr. Castle.

20       Well, the guidelines are generally advisory, but not

21  completely in this case because there is the mandatory 15-year

22  minimum sentence of confinement, but in any event, I do have

23  to consider those guidelines in reaching a sentence which

24  reflects my duty to impose a sentence which is sufficient but

25  not greater than necessary to comply with the purposes of

Section 3553(a).

Now, the statute starts off instructing the Court to consider the nature and circumstances of the offense and the seriousness of the offense, and I think I've already explained what I think the seriousness of the offense is. The sexual exploitation of defendant's two young daughters is pretty much off the scale in terms of seriousness, and in addition, particularly with regard to Count 2, which is going to be dismissed by the government, but, nevertheless, I can consider, but under Count 2 it's clear that Mr. Batt distributed other photographs other than the two of his 3-year old daughter.

The history and characteristics of the defendant. Mr. Batt shows us that he's 36 years old, he's now divorced as a result of this offense. His two young daughters are the primary victims in this case. He's well educated. He has a large and very supportive family. I didn't count the letters but there are a lot of letters from his siblings, his parents, his grandmother which give a picture that is not at all compatible with the actions and, in fact, the words of Mr. Batt. As Mr. Castle indicated, the prehearing report cites and quotes things that Mr. Batt said to others with regard to his activities, but his family knows him in a much different context, and I imagine that it was -- maybe not, but I imagine it was pretty difficult to carry out that picture of a family

oriented person who cared greatly for his family members, who

was a great helpmate to his siblings, his grandmother who

was -- who she saw as a great father, to maintain that --

maybe that was the fantasy, but to maintain that picture while

carrying out these very -- unacceptable is hardly the word --

offenses for which he has plead guilty.

The purposes of sentencing certainly are all in play

in this case.  Punishment, respect for the law, perhaps most

importantly specific deterrence to criminal conduct,

protection of the public, although as pointed out by Mr.

Castle, in the additional areas for assessment there is a

recognition of the much broader victimization that takes place

as a result of the collection and distribution and, in this

case, manufacture of child pornography, and I cannot emphasize

enough to all of you who are here just how awful child

pornography can be.  In my role I sometimes have to look at it

myself, and it is not anything that any of you want to

experience.  And Mr. Batt, as noted, had an extensive

collection of this kind of photography.

Now, one of the factors involved in the statutory

requirements is to find out whether the defendant needs

medical, educational, or correctional treatment.  Certainly

correctional treatment, but I think also he's correct that to

provide him with some way to understand and correct the kinds

of impulses that led him to do what he did.

The final thing under the statute, the statute says we want to avoid unwarranted disparities, and I don't think that really comes into play here. I think in general the sentences that are meted out for this kind of behavior are certainly within the realm of what the guidelines call for.

Now, Mr. Nunzio, the good lawyer that he is, makes a very strong argument, strong in the sense that I think it really covers the bases in terms of what factors should be considered in granting a variance, but to say that Mr. Batt knows he needs mental health treatment, he's empathetic, he has been a good brother to his younger siblings and to his extended family, that he was a good dad to his daughters, and, you know, that comes through in terms of everything other than the most important thing which is what he did to them. That he's had mental health and -- problems and poor coping mechanisms, that he now understands how grave his crime was and in particular the contribution to the child pornography industry. He's remorseful, not violent. His images didn't depict violence or sexual penetration. He's lost everything, and that he can be rehabilitated. And that remains to be seen, but none of that, I think, puts a dent in the magnitude of the offense that has been committed here, so I decline to grant a variance on Mr. Nunzio's argument, as careful as it is, and pursuant to the Sentencing Reform Act of 1984, it is my sentence that Mr. Batt serve 360 months incarceration to be

followed by 10 years of supervised release subject to the

standard conditions of reporting and remaining law abiding.

Now, before our hearing this morning we provided Mr.

Batt and Mr. Nunzio with an order regarding additional

sentencing conditions.  Both of them have signed that order

indicating they've reviewed it and understand it, and I am

signing that order for entry right now.

The fine in this case is waived.  I do order the

mandatory special assessment -- well, first of all,

restitution.  Mr. Castle, am I correct that the $19,000 is all

of the restitution that the U.S. Attorney's Office is aware of

being requested?

MR. CASTLE:  Yes, Your Honor.

THE COURT:  Okay.  I order the $19,000 requested

restitution.

I also order the mandatory special assessment of $100

as well as an assessment of $5,000 under the Justice for

Victims of Trafficking Act and $10,000 under the Child

Pornography Victim Assistance Act.

I will make the following recommendations to the

Bureau of Prisons.  First, for educational and vocational

programming.  Second, for mental health evaluation and

treatment as indicated.  Third, for sex offender programming,

and, finally, Mr. Nunzio, does your client have a specific

request with regard to placement?

1         MR. NUNZIO:  Yes, Your Honor.  If the Court could

2  make a local placement here to the state of Michigan, either

3  in Indiana or Ohio, I think those are the closest, Your Honor.

4         THE COURT:  Okay.

5         MR. NUNZIO:  Thank you.

6         THE COURT:  Understanding that it is the final

7  responsibility of the Bureau of Prisons to determine

8  placement, but I can make a recommendation to the extent they

9  may follow it or not.

10         Mr. Castle, does the government move to dismiss Count

11  2 of the indictment?

12         MR. CASTLE:  Yes, Your Honor.

13         THE COURT:  That is granted.  There was a preliminary

14  order of forfeiture entered on July 31, 2023.  Do we

15  anticipate a final order at some point?

16         MR. CASTLE:  We will submit one, Your Honor.

17         THE COURT:  Thank you.  Are there any legal

18  objections to the sentence which I've just imposed; that is,

19  is there any reason that's not already on the record why

20  sentence should not be imposed as indicated.  Mr. Castle?

21         MR. CASTLE:  No, Your Honor.

22         THE COURT:  Mr. Nunzio?

23         MR. NUNZIO:  We have none.  Thank you.

24         THE COURT:  Thank you.  Mr. Batt, we need to talk

25  about your appellate rights.  You do have the right to appeal

my sentence, and there are two things that you need to know about that and to take away from this hearing. The first is that there's going to be an order entered on my sentence which I just announced, and that will happen today, and that event starts a 14-day period running. Now, what that means is that in the next 14 days you have to decide whether you want to appeal my sentence. You need to talk to Mr. Nunzio about that. He can tell you what your options are. He can tell you what the potential consequences are, and I'm sure he can answer any of your questions, but the important thing, the bottom line is that it's your responsibility to let him know within 14 days if you want to pursue an appeal so he can do what's necessary to make sure that happens.

The second thing you need to know is that in the event you do wish to appeal, Mr. Nunzio will continue to represent you. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. Is there is anything else, Mr. Castle?

MR. CASTLE: Nothing more from the government, Your Honor.

THE COURT: Mr. Nunzio?

MR. NUNZIO: Your Honor, I don't know if this is an appropriate time to bring this up, but counsel is going to be unavailable starting tonight for the next 14 days,

unfortunately. I finish up the last of the cases involving the plot to kidnap and kill the governor of the state of Michigan up in Antrim County. I know Mr. Batt is indigent at this point in time, and I don't know if it's appropriate or not and certainly will let counsel know, but at this point in time for purposes of him to have a good discussion with a lawyer regarding his appellate avenue, we'd ask the Court to appoint him other counsel because I'm going to be unavailable. I'm due up in Antrim starting tomorrow morning, and I'm not going to be available, and I don't know if this is appropriate. Forgive me if it's not.

THE COURT: Well, it's as good a time as any. We will refer it to the magistrate judge to take the information about indigency and, if necessary, to appoint counsel.

MR. NUNZIO: Thank you very much, Your Honor. I'm sorry to bring it up at this point in time.

THE COURT: No problem.

Okay. That all being said, nothing further to put on the record here. Mr. Batt is remanded to the custody of the federal marshal, and we're adjourned.

THE CLERK: All rise, please. Court is now adjourned.

*(Whereupon, hearing concluded at 11:47 a.m.)*

*REPORTER'S CERTIFICATE*

       I, Genevieve A. Hamlin, Official Court Reporter for the United States District Court for the Western District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a full, true and correct transcript of the proceedings had in the within entitled and numbered cause on the date hereinbefore set forth; and I do further certify that the foregoing transcript has been prepared by me or under my direction.


                      /s/ Genevieve A. Hamlin

                      Genevieve A. Hamlin.
                      CSR-3218, RMR, CRR
                      U.S. District Court Reporter
                      110 Michigan Avenue NW
                      Suite 601
                      Grand Rapids, MI 49503
                      (517) 881-9582